**In The United States District Court
For The Southern District Of New York**



|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>            Plaintiff,<br>vs.<br><br>Stephen Walsh, Paul Greenwood, Westridge Capital Management, Inc., WG Trading Investors, LP, WGIA, LLC,<br>            Defendants,<br><br>Westridge Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K&L Investments, and Janet Walsh,<br><br>            Relief Defendants. | Civil Action No: 09-cv-1749<br><br>Consent Order of Permanent Injunction and Ancillary Equitable Relief Under The Commodity Exchange Act Against Defendant Paul Greenwood |

On February 25, 2009, plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint alleging that, since at least 1996, defendant Paul Greenwood ("Greenwood" or "Defendant") was one of two individual defendants who orchestrated a fraudulent scheme involving the misappropriation of at least $553 million dollars from commodity pool participants, including state retirement pension plans and university foundations, in violation of the anti-fraud provisions of Sections 4b(a)(2) and 4o(1)(A) &(B) of the Commodity Exchange Act (the "CEA" or "Act"), 7 U.S.C. §§ 6b(a)(2) and 6o(1)(A) & (B) (2006), and Section 4b(a)(1) of the Act as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), § 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 6b(a)(1).

By Order dated February 25, 2009, the Court entered a statutory restraining order ("SRO") that, in relevant part, froze Greenwood's assets, prohibited the destruction of any books and records, and appointed Robb Evans LLC as Receiver ("Receiver") with full powers of an equity receiver. On May 22, 2009, the Court entered a Preliminary Injunction against, *inter alia*,

1

Greenwood, which provided that the terms of the SRO shall remain in effect and that Robb Evans LLC shall continue to act as Receiver in this matter.

## I.

## CONSENT AND AGREEMENT

To effect settlement of this action without a trial on the merits or further judicial proceedings, Greenwood:

1.　　Consents to the entry of this *Consent Order of Permanent Injunction, and Other Equitable Relief* ("Partial Judgment");

2.　　Admits this Court's personal and subject matter jurisdiction over him in this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

3.　　Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

4.　　Waives: (a) any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 148.1, *et seq.* (2010), relating to or arising from this action; (b) any and all claims that he may possess under the Small Business Regulatory Enforcement Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from the Partial Judgment;

5.　　Neither admits nor denies the allegations of the Complaint, except as to jurisdiction and venue, which he admits, as stated in paragraphs 2 and 3 above and paragraphs 13 and 14 below.  Solely with respect to any bankruptcy proceeding relating to Greenwood, any proceeding to revoke, restrict, or condition the registration of Greenwood pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1, *et seq.*, and/or any proceeding to enforce terms of this Partial Judgment, Greenwood agrees that the allegations

of the Complaint, and the Findings of Fact and Conclusions of Law in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof;

6.      Agrees to provide immediate notice to this Court and the Commission by certified mail of any bankruptcy proceeding filed by, on behalf of, or against him.  No provision of this Consent Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Greenwood, or any other person in any other proceeding;

7.      Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Consent Order, or creating, or tending to create, the impression that the Complaint or this Partial Judgment is without a factual basis; provided, however, that nothing in this provision shall affect Greenwood's (a) testimonial obligations, or (b) right to take legal positions in other proceedings in which the Commission is not a party. Greenwood shall undertake all steps necessary to ensure that all of his agents and employees under his authority or control understand and comply with this agreement

8.      Acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules of self-regulatory organizations, licensing boards or other regulatory organizations.   Such collateral consequences may include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding;

9.      Acknowledges that he will not oppose the enforcement of the Partial Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon;

10.      Waives service of the Partial Judgment and agrees that entry of the Partial Judgment with the Court and filing with the Clerk of the Court will constitute notice to Greenwood of its terms and conditions.  Greenwood agrees to execute and to provide to the Commission a written declaration pursuant to 28 U.S.C. § 1746 acknowledging his receipt of the Partial Judgment no later than twenty (20) days after a copy of the Partial Judgment has been

3

delivered to Greenwood's counsel, Susan R. Necheles, Hafetz, Necheles & Rocco, 500 Fifth Avenue, 29th Floor, New York, New York 10110.

11.     Consents to the continued jurisdiction of this Court for the purpose of: resolving the reserved issues of the amounts of disgorgement and civil monetary penalty; implementing and enforcing the terms and conditions of this Partial Judgment; and for any other purposes relevant to this action, even if Greenwood now or in the future resides outside this jurisdiction; and

12.     Affirms that Greenwood has read this Partial Judgment and agrees to this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce his consent to this Partial Judgment, other than as set forth specifically herein.

## II.

## FINDINGS

### A.    Jurisdiction and Venue

13.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the CFTC to seek injunctive relief against any person who has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order promulgated thereunder.

14.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(3), because Defendant is a resident of this District and transacted business, among other places, in this District, and the acts and practices in violation of the Act have occurred, among other places, within this District.

### B.    Relevant Parties in the Case

#### Plaintiff

15.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with responsibility for administering and

4

enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq*. (2006), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*. (2010).

**Defendants**

16.     Defendant **Paul Greenwood** is an individual residing in North Salem, New York. Greenwood is registered with the Commission as a commodity pool operator ("CPO") (NFA ID # 279710), and his registered business address is WG Trading Co. LP, One Lafayette Place, 2nd Floor, Greenwich, CT 06830.  Greenwood is listed as a co-CPO with Stephen Walsh for WG Trading Company.

17.     Defendant **Stephen Walsh** ("Walsh") is an individual residing in Sands Point, New York.  Walsh is registered with the Commission as a CPO (NFA ID # 279714), and his registered address is WG Trading Co. LP, One Lafayette Place, 2nd Floor, Greenwich, CT 06830. Walsh is listed as a co-CPO with Greenwood for WG Trading Co.  Walsh represents to prospective pool participants that he is a member of the University at Buffalo Foundation Board and serves on the investment committee, and that he served as co-chairman of the New York Islanders Hockey Team and a member of the Board of Governors of the National Hockey League from 1991-1998.

18.     Defendant **Westridge Capital Management, Inc**. ("Westridge") is a Delaware corporation with a principal place of business in Santa Barbara, CA.  Westridge is registered with the Securities and Exchange Commission ("SEC") as a investment adviser and is the investment adviser for the Westridge Capital Management Enhancement Funds pool. Greenwood and Walsh are partners holding a controlling interest in Westridge.

19.     Defendant **WG Trading Investors, LP** ("WGTI") is a Delaware limited partnership with a principal place of business in Greenwich, CT.  The managing general partners

5

of WGTI are Greenwood and Walsh.  At all relevant times, WG Trading Investors, LP ("WGTI"), a Delaware limited partnership having its principal place of business in Greenwich, Connecticut, was a limited partner in WG Trading Co. LP ("WGTC").

20.     Defendant **WGIA, LLC** ("WGIA") is a Delaware limited liability company. WGIA is owned by Greenwood, Walsh and others.

**Relevant Relief Defendants**

21.     Relief Defendant **WG Trading Co. LP** is a commodity pool (NFA ID P4703) operated by Greenwood and Walsh as co-CPOs with a principal place of business in Greenwich, CT.  WGTC is a registered broker-dealer under the Securities and Exchange Act of 1934.  The managing general partners of WGTC are Greenwood and Walsh, and WGTI is a limited partner.

22.     Relief Defendant **Westridge Capital Management Enhancement Funds, Inc**. is a commodity pool with an address in Tortola, British Virgin Islands.  Among this pool's participants are university foundations and retirement and pension plans.

23.     Relief Defendant **K & L Investments, LLC** is a Connecticut limited liability company with a principal place of business in Greenwich, CT.  The managing general partner of K&L Investments, LLC is Greenwood, and it is owned by Walsh and Greenwood.

24.     Relief Defendant **WGI, LLC** is a Connecticut limited liability company with a principal place of business in Greenwich, CT.  WGI, LLC is owned by Greenwood and Walsh.

**C.     Facts**

25.     At all relevant times, Greenwood and Walsh were the Managing General Partners of WG Trading Company Limited Partnership ("WGTC"), a Delaware limited partnership operating as a commodity pool.  Greenwood also was the Chief Operating Officer and Chief

Financial Officer of WGTC.  Walsh also was the Chief Executive Officer and senior registered options principal of WGTC.

26.     At all relevant times, WGTC was a broker-dealer registered with the SEC under the Securities Exchange Act of 1934, and a commodity pool as defined in regulations of the CFTC.  WGTC had offices in Greenwich, Connecticut, Jersey City, New Jersey, and North Hills, New York, and executed securities trades through the New York Stock Exchange in New York, New York.

27.     At all relevant times, Greenwood and Walsh were registered with the CFTC as commodity pool operators and were associated persons of a broker-dealer registered with the SEC.

**The Scheme to Defraud**

28.     From at least January 1996 through February 2009 (the "Relevant Time"), Greenwood and Walsh orchestrated a scheme to defraud pool participants and prospective pool participants in WGTC and WGTI, through Westridge and WGIA.  Through this scheme, Greenwood, Walsh, and others known and unknown, solicited funds under false pretenses, failed to invest investors' funds as promised, and misappropriated and converted investors' funds to the personal benefit of Greenwood, Walsh, and others, without the knowledge or authorization of the investors.

29.     During the Relevant Time, Greenwood and Walsh solicited more than $7.6 billion from institutional investors including charitable and university foundations, pension and retirement plans, and other institutions.  Greenwood and Walsh told investors, both orally and in writing, that investor funds would be traded pursuant to a strategy called equity index arbitrage, which involved buying and simultaneously selling through futures the stocks of a well-known

7

equity index (such as the Standard and Poor's 500 Index). The marketing materials provided to investors for WGTC and WGTI and their affiliates represented that the equity index arbitrage strategy was a low risk strategy that had consistently outperformed the results of the Standard and Poor's 500 Index for a period of more than 10 years.

30.     At all relevant times, investors were offered the opportunity to invest in WGTC through different mechanisms. *First*, an investor could purchase a limited partnership interest in WGTC. *Second*, an investor could invest through WGTI by delivering funds to WGTI in exchange for a promissory note from WGTI to the investor that would pay interest at a rate similar to the rate of return realized by a limited partnership interest in WGTC. The investors were told that WGTI was itself a limited partner of WGTC and that their funds would be passed through to WGTC for investment pursuant to the equity index arbitrage strategy. *Third*, an investor could purchase an interest in an offshore fund, which in turn would invest the investor funds through WGTI in exchange for a promissory note issued by WGTI to the offshore fund.

31.     Based on the solicitations of Greenwood and Walsh, personally and through their corporate entities, some pool participants invested funds directly into WGTC by subscribing to limited partnership agreements with WGTC, while other pool participants invested funds into WGTC through an arrangement that involved the execution of promissory notes, with an agreement and understanding between Greenwood, Walsh, and the pool participants that the funds invested via promissory note would be traded in equity index arbitrage strategy described and promised by Greenwood and Walsh. Greenwood and Walsh represented to the pool participants who entered into such promissory note arrangements that they would earn and share in the pool trading profits promised by Greenwood and Walsh in a manner and degree similar to

the manner and degree that pool participants who were limited partner subscribers in WGTC itself.

32.     Other pool participants invested funds in the WGTC pool either by subscribing to limited partnership agreements with Westridge or by entering into promissory note arrangements with Westridge or WGIA, with an agreement and understanding that (a) the funds invested by the participants would be traded in the equity index arbitrage strategy described and promised by Walsh and Greenwood and (b) that the pool participants who invested funds with Greenwood, Walsh, Westridge into the WGTC pool through the means of a promissory note arrangement would earn and share in the pool trading profits promised by Greenwood and Walsh in a manner and degree similar to the manner and degree that limited partner subscribers in Westridge would receive.

33.     Greenwood, Walsh and Westridge represented to all prospective pool participants and pool participants, regardless of whether such pool participants invested with defendants through the means of a limited partnership agreement or promissory notes, that the trading strategy and the means by which all pool funds would be invested would be in the equity index arbitrage strategy described and promised by Walsh and Greenwood.

34.     In addition to the activity described above, Walsh, Greenwood, Westridge, WGTI, WGIA, WGTC, and the Westridge Capital Management Enhancement Funds, Inc. pool, solicited, accepted or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

9

35.    A certain portion of the pool participants' funds solicited and received by the defendants were invested or deposited with relief defendants WGI LLC and K&L Investments.

**Misrepresentations and Omissions by Greenwood and Walsh**

36.    Contrary to the representations to investors that their funds would be invested pursuant to the equity index arbitrage strategy, Greenwood and Walsh used investor funds to, among other things, finance their lavish personal lifestyles, meet the periodic redemption requests of other investors, make payments in connection with an investment in a publicly traded company that went bankrupt, and make payments for other investments and loans by WGTC and WGTI.  Further, Greenwood and Walsh created and caused others to create false account statements that were sent to investors to reflect fictitious returns consistent with the returns that had been promised to those investors.

37.    During the Relevant Time, Greenwood and others known and unknown, caused WGTI to divert approximately $80 million to or for the benefit of Greenwood, including payments which were made by wire transfer from a WGTI account to recipient banks in the Southern District of New York.  From on or about January 1, 1999, through on or about January 9, 2009, Walsh, and others known and unknown, caused WGTI to divert approximately $51 million to or for the benefit of Walsh, including payments which were made by wire transfer from a WGTI account to recipient banks in the Southern District of New York. These payments were directed to Greenwood and Walsh, to members of their families, to various entities that they or their family members controlled, and/or to persons and entities for goods (including antiques and collectibles) and services purchased by Greenwood and Walsh.

38.    In order to conceal the fact that Greenwood and Walsh were misappropriating investor funds, and the fact that neither WGTC nor WGTI was profitable, Greenwood and Walsh

10

directed a subordinate to prepare promissory notes that were issued by Greenwood and Walsh to WGTI.  From in or about 1998 through in or about 2008, Greenwood issued promissory notes to WGTI totaling approximately $293 million ("Greenwood Notes").  From in or about 1998 through in or about 2008, Walsh issued promissory notes totaling approximately $261 million ("Walsh Notes").

      39.    The amount of the Greenwood Notes and Walsh Notes that Greenwood and Walsh issued to WGTI included: (a) the funds that were transferred to or for the benefit of Greenwood and Walsh, respectively; (b) the capitalization of purported investor earnings paid to or accrued for investors who held notes issued by WGTI which earnings were fictitious and fraudulent; and (c) write-offs in unprofitable investments that Greenwood and Walsh had made through WGTC and WGTI.

      40.    Greenwood and Walsh failed to disclose to the pool participants that (a) they did not intend to and in fact did not invest participants' funds as they represented orally and in writing to participants, and (b) they were misappropriating participants' funds for personal use, to conceal trading losses, and to pay redemption requests to other pool participants that were based on fictitious rates of return.

### III.

### CONCLUSIONS OF LAW

**A.    Greenwood Violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6(b)(a)(2)(i), (iii) (2006), and Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (C)**

      1.    Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C §§6b (2)(i), (iii) (2006), make it unlawful for any person to cheat or defraud or attempt to cheat or defraud, or willfully deceive or attempt to deceive by any means whatsoever other persons in or in connection with orders to

11

make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the produce of byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof in connection with commodity futures contract sales or purchases.

2.      Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (C), make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a contract market, for or on behalf of any other person (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

3.      During the Relevant Time, Greenwood violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i), (iii) (2006), with respect to acts occurring before June 18, 2008, and violated Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (C), with respect to acts occurring on or after June 18, 2008, in that he cheated or defrauded pool participants by: misrepresenting the pools' investment strategy when soliciting prospective participants; misappropriating participants' funds for his personal use failing to inform prospective and actual pool participants that their funds would be and had been

misappropriated for the personal use of Greenwood and Walsh; and concealing from investors

trading and investment losses.

**B.     Greenwood Violated Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1) (2006)**

      4.      During the Relevant Time, Greenwood acted as a CPO in that he engaged in a

business that is of the nature of an investment trust, syndicate, or similar form of enterprise and

in connection therewith, accepted or received funds, securities or properties from others for the

purpose of trading in any commodity for future delivery on or subject to the rules of any contract

market or derivatives transaction execution facility.

      5.      During the Relevant Time, Greenwood violated Sections 4$o$(1)(A) and (B) of the

Act, 7 U.S.C. §§ 6$o$(1)(A), (B) (2006), in that as a CPO, he directly or indirectly employed a

device, scheme, or artifice to defraud commodity pool participants, or engaged in transactions,

practices or a course of business that operated as a fraud or deceit upon commodity pool

participants by: misrepresenting the pools' investment strategy when soliciting prospective

participants; misappropriating participants' funds for his personal use failing to inform

prospective and actual pool participants that their funds would be and had been misappropriated

for the personal use of Greenwood and Walsh; and concealing from investors trading and

investment losses.

**IV.**

**ORDER FOR PERMANENT INJUNCTION**

      1.      Greenwood is permanently restrained, enjoined and prohibited from directly or

indirectly, in or in connection with any order to make, or the making of, any contract of sale of

any commodity in interstate commerce or for future delivery that is made, or to be made, on or

subject to the rules of a contract market, for or on behalf of any other person (A) to cheat or

13

defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person in violation of Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A), (C).

2.    Greenwood is permanently restrained, enjoined and prohibited from using the mail or any means or instrumentality of interstate commerce to directly or indirectly employ any device, scheme or artifice to defraud any client of participant or prospective client or participant, or to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006).

3.    Greenwood is permanently restrained, enjoined and prohibited from engaging, directly or indirectly, in:

a)    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

b)    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for his own personal account or for any account in which he has a direct or indirect interest;

c)    having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on his behalf;

d)    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

14

e)   soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

f)   applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010);

g)   acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person (as that term is defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2006)) registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010);

4.   The injunctive provisions of this Order shall be binding upon Greenwood and any person acting as an agent, employee, servant or attorney of Greenwood, and any person in active concert and participation with Greenwood who receives actual notice of this Order by personal service or otherwise.

## V.

## DISGORGEMENT AND CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED THAT:**

1.   Greenwood shall disgorge funds received as a result of the course of illegal conduct alleged in the Complaint. The disgorgement amount is to be determined at a later date by agreement between the CFTC and Greenwood within one hundred twenty (120) days of the termination of the court-appointed receivership in this case, or by the Court as soon as possible thereafter.

2.   Greenwood shall pay to the Commission a civil monetary penalty, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006). The amount of the civil monetary penalty is to be determined at a later date by agreement between the CFTC and Greenwood within one

15

hundred twenty (120) days of the termination of the court-appointed receivership in this case, or by the Court as soon as possible thereafter.

3.     In connection with any hearing or briefing to determine the amount of disgorgement and/or civil monetary penalty, and at any oral argument held, (a) Greenwood shall be precluded from arguing that he did not violate the Act as alleged in the Complaint and found in this Partial Judgment; (b) he may not challenge the validity of this Partial Judgment or his consent thereto; (c) solely for purposes of such hearing, briefing or argument, the allegations of the Complaint shall be accepted and deemed true by the Court; and (d) the Court may determine the issues raised in the hearing, briefing or argument on the basis of affidavits, declarations, excerpts of sworn testimony or investigative testimony and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure and without conducting an evidentiary hearing.

## VI.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall retain jurisdiction of this matter for the purpose of: resolving the reserved issues of the amounts of disgorgement and civil monetary penalty; implementing and enforcing the terms and conditions of this Partial Judgment; and for any other purpose.

/ / /

/ / /

/ / /

/ / /

16

## VII.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that there being no just

reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is

ordered to enter this Partial Judgment forthwith and without further notice.

SO ORDERED:    8-JUL 2010

**UNITED STATES DISTRICT JUDGE**
**HON. GEORGE B. DANIELS**
HON. GEORGE B. DANIELS

Consented to:

Paul Greenwood
Date: JULY 28        , 2010

On July 28   , 2010, Paul Greenwood   , a person known to
me, personally appeared before me and acknowledged executing the foregoing Consent.

Notary Public

**BERNICE HOPE BOOKER**
**NOTARY PUBLIC, STATE OF NEW YORK**
**NO. 01BO6169209, NEW YORK COUNTY**
**COMMISSION EXPIRES JUNE 25, 20 11**

Paul G. Hayeck
Peter M. Haas
JonMarc P. Buffa
Attorneys for Plaintiff U.S. Commodity
Futures Trading Commission
1155 21st Street N.W.
Washington, D.C. 20581

Approved as to form:

Frederick Phillp Hafetz, Esq.
Hafetz, Necheles & Rocco
500 Fifth Avenue
New York, New York 10110
Attorney for Defendant Paul Greenwood

17