# EXHIBIT D

Master Promissory Note

$ 4,000,000 . .                                     Date: June 2, 1998
                                                    Greenwich, Connecticut

FOR VALUE RECEIVED, the undersigned, WG Trading Investors, LP, a Delaware limited partnership (the "Borrower"), hereby promises to pay Viacom Inc. ("Lender"), the amounts listed under the "Principal Balance" column(s) on the schedule(s) attached hereto, which is/are made a part of this note, up to a maximum original principal amount of $4,000,000 on the maturity date for each loan. The maturity date for each installment of principal loaned and reflected on the attached schedule shall be the later of six (6) months from the date of each such loan or written notice of demand. In the event of a demand, the principal of a loan and any accrued interest thereon shall be paid within 90 days after the receipt of such demand. The "Original Principal" shall be the amount(s) the Lender lends to the Borrower on the initial borrowing date of each loan hereunder. Interest with respect to each loan shall be calculated as set forth below and shall be payable at maturity. All payments of principal and interest shall be made in United States dollars in immediately available funds to such bank account as Lender shall direct in writing.

The Borrower shall invest each borrowing of Original Principal in a limited partnership interest in WG Trading Company Limited Partnership, a Delaware limited partnership (the "Partnership"). "Interest" payable hereunder shall accrue at a monthly rate equal to the monthly rate of return (gain or loss) generated with respect to the capital account in the Partnership established by the Borrower with the Original Principal (the "Capital Account"), subject to the next sentence and the last two sentences of this paragraph. Beginning on the first day of the calendar month after each Original Principal borrowing, the Original Principal on each loan shall be adjusted to reflect the loan's proportionate share of the prior month's capital gain or loss on the Capital Account, subject to the last two sentences of this paragraph. That adjustment shall be recorded on the schedules attached to this note to determine the Principal Balance for each loan. The Principal Balance for each loan shall be adjusted in the same manner as described in the previous sentences, on the first day of each calendar month thereafter so long as the loan is outstanding. All calculations of interest and Principal Balance shall be based on the Partnership's investment in Index Arbitrage and U.S. Convertible Hedging (the "Strategies"), as further described in Attachment "A". If the partnership invests its monies in a manner other than the Strategies, the interest and Principal Balance calculable hereunder shall be the extrapolated net income and net capital gain or loss, respectively, in the Capital Account as if all funds had been invested only in the Strategies.

Borrower covenants that it will manage the Original Principal in accordance with the provisions of this Note and attachments thereto. Any violation of this covenant shall be an event of default under this Note and the capital Principal Balance under all outstanding notes shall be due immediately upon such event of default.

Borrower covenants that, subject to any applicable fiduciary principles, it shall not agree to amend the Partnership in any manner adverse to the Lender. Any violation of the covenant shall be an event of default under this note and the Principal Balance under all outstanding notes shall be due immediately upon such event of default. Any Interest or Principal which is not paid when due shall bear interest at the prime rate then in effect plus two percent per annum, until the time such funds are paid.

As used herein, the term "Notice" shall mean any written document which is originally executed and is sent by United States mail, express or messenger deliver services or telecopy confirmed by telephone. A Notice shall be deemed to be given upon its receipt by the addressee (in the case of telecopy, upon telephonic confirmation following such receipt).

The Borrower warranted and represents to the Lender that (a) the Borrower is a partnership duly formed and in good standing under the laws of the State of Delaware, (b) the execution and delivery of this Note and the performance by the Borrower of its obligations hereunder are within the Borrower's powers and have been duly authorized by all necessary action on the Borrower's part, (c) the making and performance by the Borrower of this Note do not and will not contravene or conflict with the Borrower's Partnership Agreement or violate or constitute a default under any law, any requirement or restriction as in effect on the date hereof imposed by judicial, arbitral or other governmental instrumentality or any agreement, instrument or indenture as in effect on the date hereof by which the Borrower is bound, and (d) this Note is a legal, valid and binding obligation of the Borrower, enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization or similar laws affecting the enforcement of creditors' rights generally and except that the remedies of specific performance and injunctive and other forms of equitable relief are subject to certain equitable defenses and to the discretion of the court before which any proceeding therefor may be brought.

So long as any amount is outstanding under this Note the Borrower shall furnish to the Lender audited financial statements within 90 days after the close of each fiscal year of the Partnership.

WG Trading Investors, LP

By: _Paul R Greenwood_

Its General Partner

## WG TRADING COMPANY, LP

### INVESTMENT GUIDELINES

1. At least 80% of the WG Trading portion of the investment will be invested in stock index arbitrage of the S&P 500 Index or the S&P 400 Index. The funds which are not invested in stock index arbitrage will earn overnight interest rates.

2. Not more than 20% of the WG Trading portion of the investment will be invested in U.S. convertible bond hedging, preferred stock hedging, and warrant hedging (i.e. convertible hedging). In the hedged positions, WG will buy convertible bonds, preferred stocks, or warrants and simultaneously sell short the underlying common stock. This is a market neutral position which sets up a positive cash flow in the broker-dealer environment of WG. This positive cash flow serves to reduce the volatility of the overall portfolio return.

3. No individual holding will comprise more than 10% of the convertible bond, preferred stock, and warrant hedging portfolio.

## SCHEDULE A

| Date of Original Principal | Amount of Orignial Borrowing | Monthly Capital Return | Principal Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |