**In The United States District Court**
**For The Southern District Of New York**



---

COMMODITY FUTURES TRADING
COMMISSION,

               Plaintiff,

vs.

Stephen Walsh, Paul Greenwood, Westridge
Capital Management, Inc., WG Trading Investors,
LP, WGIA, LLC,

               Defendants,

Westridge Capital Management Enhancement
Funds Inc., WG Trading Company LP, WGI
LLC, K&L Investments, and Janet Walsh,

               Relief Defendants.

Civil Action No: 09-cv-1749

Consent Order of Permanent
Injunction and Ancillary Equitable
Relief Under The Commodity
Exchange Act Against Defendant
Stephen Walsh

---

     On February 25, 2009, plaintiff Commodity Futures Trading Commission

("Commission" or "CFTC") filed a Complaint alleging that, since at least 1996, defendant

Stephen Walsh ("Walsh" or "Defendant") was one of two individual defendants who

orchestrated a fraudulent scheme involving the misappropriation of at least $553 million dollars

from commodity pool participants, including state retirement pension plans and university

foundations, in violation of the anti-fraud provisions of Sections 4b(a)(2) and 4o(1)(A) &(B) of

the Commodity Exchange Act (the "CEA" or "Act"), 7 U.S.C. §§ 6b(a)(2) and 6o(1)(A) & (B)

(2006), and Section 4b(a)(1) of the Act as amended by the Food, Conservation, and Energy Act

of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")),

§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), 7 U.S.C. § 6b(a)(1) (2012).

     By Order dated February 25, 2009, the Court entered a statutory restraining order

("SRO") that, in relevant part, froze Walsh's assets, prohibited the destruction of any books and

records, and appointed Robb Evans LLC as Receiver ("Receiver") with full powers of an equity

receiver. On May 22, 2009, the Court entered a Preliminary Injunction against, *inter alia*,

Walsh, which provided that the terms of the SRO shall remain in effect and that Robb Evans LLC shall continue to act as Receiver in this matter.

## I.

## CONSENT AND AGREEMENT

To effect settlement of this action without a trial on the merits or further judicial proceedings, Walsh:

1.    Consents to the entry of this *Consent Order of Permanent Injunction and Ancillary Equitable Relief Under The Commodity Exchange Act Against Defendant Stephen Walsh* ("Partial Judgment" or "Consent Order");

2.    Admits this Court's personal and subject matter jurisdiction over him in this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

3.    Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

4.    Waives:  (a) any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or Part 148 of the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 148.1, *et seq.* (2013), relating to or arising from this action; (b) any and all claims that he may possess under the Small Business Regulatory Enforcement Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from the Partial Judgment;

5.    Neither admits nor denies the allegations of the Complaint, except as to jurisdiction and venue, which he admits, as stated in paragraphs 2 and 3 above and paragraphs 13 and 14 below.  Solely with respect to any bankruptcy proceeding relating to Walsh, any proceeding to revoke, restrict, or condition the registration of Walsh pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1, *et seq.*, and/or any proceeding to enforce terms of this Partial Judgment and any subsequent orders entered in this

proceeding, Walsh agrees that the allegations of the Complaint, and the Findings of Fact and Conclusions of Law in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof;

6.      Agrees to provide immediate notice to this Court and the Commission by certified mail of any bankruptcy proceeding filed by, on behalf of, or against him.  No provision of this Consent Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Walsh, or any other person in any other proceeding;

7.      Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Consent Order, or creating, or tending to create, the impression that the Complaint or this Partial Judgment is without a factual basis; provided, however, that nothing in this provision shall affect Walsh's (a) testimonial obligations, or (b) right to take legal positions in other proceedings in which the Commission is not a party. Walsh shall undertake all steps necessary to ensure that all of his agents and employees under his authority or control understand and comply with this agreement.

8.      Acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules of self-regulatory organizations, licensing boards or other regulatory organizations.   Such collateral consequences may include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding;

9.      Acknowledges that he will not oppose the enforcement of the Partial Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon;

10.     Waives service of the Partial Judgment and agrees that entry of the Partial Judgment with the Court and filing with the Clerk of the Court will constitute notice to Walsh of its terms and conditions.  Walsh agrees to execute and to provide to the Commission a written declaration pursuant to 28 U.S.C. § 1746 acknowledging his receipt of the Partial Judgment no

3

later than twenty (20) days after a copy of the Partial Judgment has been delivered to Walsh's counsel, Justin M. Sher of Sher Tremonte LLP, 80 Broad Street, Suite 1301, New York, New York 10004.

11.     Consents to the continued jurisdiction of this Court for the purpose of: resolving the reserved issues of the amounts of disgorgement and civil monetary penalty; implementing and enforcing the terms and conditions of this Partial Judgment; and for any other purposes relevant to this action, even if Walsh now or in the future resides outside this jurisdiction; and

12.     Affirms that Walsh has read this Partial Judgment and agrees to this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce his consent to this Partial Judgment, other than as set forth specifically herein.

## II.

## FINDINGS

### A.     Jurisdiction and Venue

13.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the CFTC to seek injunctive relief against any person who has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order promulgated thereunder.

14.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(3), because Defendant is a resident of this District and transacted business, among other places, in this District, and the acts and practices in violation of the Act have occurred, among other places, within this District.

### B.     Relevant Parties in the Case

#### Plaintiff

15.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with responsibility for administering and

4

enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2006), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2010).

**Defendants**

16.    Defendant **Paul Greenwood** ("Greenwood") is an individual residing in North Salem, New York.  Greenwood is registered with the Commission as a commodity pool operator ("CPO") (NFA ID # 279710), and his registered business address is WG Trading Co. LP, One Lafayette Place, 2nd Floor, Greenwich, CT 06830.  Greenwood is listed as a co-CPO with Stephen Walsh for WG Trading Company.

17.    Defendant **Stephen Walsh** ("Walsh") is an individual residing in Port Washington, New York.  Walsh is registered with the Commission as a CPO (NFA ID # 279714), and his registered address is WG Trading Co. LP, One Lafayette Place, 2nd Floor, Greenwich, CT 06830.  Walsh is listed as a co-CPO with Greenwood for WG Trading Co. Walsh represents to prospective pool participants that he is a member of the University at Buffalo Foundation Board and serves on the investment committee, and that he served as co-chairman of the New York Islanders Hockey Team and a member of the Board of Governors of the National Hockey League from 1991-1998.

18.    Defendant **Westridge Capital Management, Inc**. ("Westridge") is a Delaware corporation with a principal place of business in Santa Barbara, CA.  Westridge is registered with the Securities and Exchange Commission ("SEC") as a investment adviser and is the investment adviser for the Westridge Capital Management Enhancement Funds pool. Greenwood and Walsh are partners holding a controlling interest in Westridge.

19.    Defendant **WG Trading Investors, LP** ("WGTI") is a Delaware limited partnership with a principal place of business in Greenwich, CT.  The managing general partners

of WGTI are Greenwood and Walsh.  At all relevant times, WG Trading Investors, LP

("WGTI"), a Delaware limited partnership having its principal place of business in Greenwich,

Connecticut, was a limited partner in WG Trading Co. LP ("WGTC").

20.      Defendant **WGIA, LLC** ("WGIA") is a Delaware limited liability company.

WGIA is owned by Greenwood, Walsh and others.

**Relevant Relief Defendants**

21.      Relief Defendant **WG Trading Co. LP** is a commodity pool (NFA ID P4703)

operated by Greenwood and Walsh as co-CPOs with a principal place of business in Greenwich,

CT.   WGTC is a registered broker-dealer under the Securities and Exchange Act of 1934.  The

managing general partners of WGTC are Greenwood and Walsh, and WGTI is a limited partner.

22.      Relief Defendant **Westridge Capital Management Enhancement Funds, Inc**. is

a commodity pool with an address in Tortola, British Virgin Islands.  Among this pool's

participants are university foundations and retirement and pension plans.

23.      Relief Defendant **K & L Investments, LLC** is a Connecticut limited liability

company with a principal place of business in Greenwich, CT.  The managing general partner of

K&L Investments, LLC is Greenwood, and it is owned by Walsh and Greenwood.

24.      Relief Defendant **WGI, LLC** is a Connecticut limited liability company with a

principal place of business in Greenwich, CT.  WGI, LLC is owned by Greenwood and Walsh.

**C.      Facts**

25.      At all relevant times, Greenwood and Walsh were the Managing General Partners

of WG Trading Company Limited Partnership ("WGTC"), a Delaware limited partnership

operating as a commodity pool.  Greenwood also was the Chief Operating Officer and Chief

Financial Officer of WGTC. Walsh also was the Chief Executive Officer and senior registered options principal of WGTC.

26.     At all relevant times, WGTC was a broker-dealer registered with the SEC under the Securities Exchange Act of 1934, and a commodity pool as defined in regulations of the CFTC. WGTC had offices in Greenwich, Connecticut, Jersey City, New Jersey, and North Hills, New York, and executed securities trades through the New York Stock Exchange in New York, New York.

27.     At all relevant times, Greenwood and Walsh were registered with the CFTC as commodity pool operators and were associated persons of a broker-dealer registered with the SEC.

**The Scheme to Defraud**

28.     From at least January 1996 through February 2009 (the "Relevant Time"), Greenwood and Walsh orchestrated a scheme to defraud pool participants and prospective pool participants in WGTC and WGTI, through Westridge and WGIA. Through this scheme, Greenwood, Walsh, and others known and unknown, solicited funds under false pretenses, failed to invest investors' funds as promised, and misappropriated and converted investors' funds to the personal benefit of Greenwood, Walsh, and others, without the knowledge or authorization of the investors.

29.     During the Relevant Time, Greenwood and Walsh solicited more than $7.6 billion from institutional investors including charitable and university foundations, pension and retirement plans, and other institutions. Greenwood and Walsh told investors, both orally and in writing, that investor funds would be traded pursuant to a strategy called equity index arbitrage, which involved buying and simultaneously selling through futures the stocks of a well-known

7

equity index (such as the Standard and Poor's 500 Index). The marketing materials provided to investors for WGTC and WGTI and their affiliates represented that the equity index arbitrage strategy was a low risk strategy that had consistently outperformed the results of the Standard and Poor's 500 Index for a period of more than 10 years.

30.     At all relevant times, investors were offered the opportunity to invest in WGTC through different mechanisms. *First*, an investor could purchase a limited partnership interest in WGTC. *Second*, an investor could invest through WGTI by delivering funds to WGTI in exchange for a promissory note from WGTI to the investor that would pay interest at a rate similar to the rate of return realized by a limited partnership interest in WGTC. The investors were told that WGTI was itself a limited partner of WGTC and that their funds would be passed through to WGTC for investment pursuant to the equity index arbitrage strategy. *Third*, an investor could purchase an interest in an offshore fund, which in turn would invest the investor funds through WGTI in exchange for a promissory note issued by WGTI to the offshore fund.

31.     Based on the solicitations of Greenwood and Walsh, personally and through their corporate entities, some pool participants invested funds directly into WGTC by subscribing to limited partnership agreements with WGTC, while other pool participants invested funds into WGTC through an arrangement that involved the execution of promissory notes, with an agreement and understanding between Greenwood, Walsh, and the pool participants that the funds invested via promissory note would be traded in equity index arbitrage strategy described and promised by Greenwood and Walsh. Greenwood and Walsh represented to the pool participants who entered into such promissory note arrangements that they would earn and share in the pool trading profits promised by Greenwood and Walsh in a manner and degree similar to

8

the manner and degree that pool participants who were limited partner subscribers in WGTC itself.

32.     Other pool participants invested funds in the WGTC pool either by subscribing to limited partnership agreements with Westridge or by entering into promissory note arrangements with Westridge or WGIA, with an agreement and understanding that (a) the funds invested by the participants would be traded in the equity index arbitrage strategy described and promised by Walsh and Greenwood and (b) that the pool participants who invested funds with Greenwood, Walsh, Westridge into the WGTC pool through the means of a promissory note arrangement would earn and share in the pool trading profits promised by Greenwood and Walsh in a manner and degree similar to the manner and degree that limited partner subscribers in Westridge would receive.

33.     Greenwood, Walsh and Westridge represented to all prospective pool participants and pool participants, regardless of whether such pool participants invested with defendants through the means of a limited partnership agreement or promissory notes, that the trading strategy and the means by which all pool funds would be invested would be in the equity index arbitrage strategy described and promised by Walsh and Greenwood.

34.     In addition to the activity described above, Walsh, Greenwood, Westridge, WGTI, WGIA, WGTC, and the Westridge Capital Management Enhancement Funds, Inc. pool, solicited, accepted or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

9

35.     A certain portion of the pool participants' funds solicited and received by the

defendants were invested or deposited with relief defendants WGI LLC and K&L Investments.

**Misrepresentations and Omissions by Greenwood and Walsh**

36.     Contrary to the representations to investors that their funds would be invested

pursuant to the equity index arbitrage strategy, Greenwood and Walsh used investor funds to,

among other things, finance their lavish personal lifestyles, meet the periodic redemption

requests of other investors, make payments in connection with an investment in a publicly traded

company that went bankrupt, and make payments for other investments and loans by WGTC and

WGTI. Further, Greenwood and Walsh created and caused others to create false account

statements that were sent to investors to reflect fictitious returns consistent with the returns that

had been promised to those investors.

37.     From on or about January 1, 1999, through on or about January 9, 2009, Walsh,

and others known and unknown, caused WGTI to divert approximately $51 million to or for the

benefit of Walsh, including payments which were made by wire transfer from a WGTI account

to recipient banks in the Southern District of New York. During the Relevant Time, Greenwood

and others known and unknown, caused WGTI to divert approximately $80 million to or for the

benefit of Greenwood, including payments which were made by wire transfer from a WGTI

account to recipient banks in the Southern District of New York. These payments were directed

to Greenwood and Walsh, to members of their families, to various entities that they or their

family members controlled, and/or to persons and entities for goods (including antiques and

collectibles) and services purchased by Greenwood and Walsh.

38.     In order to conceal the fact that Greenwood and Walsh were misappropriating

investor funds, and the fact that neither WGTC nor WGTI was profitable, Greenwood and Walsh

10

directed a subordinate to prepare promissory notes that were issued by Greenwood and Walsh to WGTI. From in or about 1998 through in or about 2008, Greenwood issued promissory notes to WGTI totaling approximately $293 million ("Greenwood Notes"). From in or about 1998 through in or about 2008, Walsh issued promissory notes totaling approximately $261 million ("Walsh Notes").

39.    The amount of the Greenwood Notes and Walsh Notes that Greenwood and Walsh issued to WGTI included: (a) the funds that were transferred to or for the benefit of Greenwood and Walsh, respectively; (b) the capitalization of purported investor earnings paid to or accrued for investors who held notes issued by WGTI which earnings were fictitious and fraudulent; and (c) write-offs in unprofitable investments that Greenwood and Walsh had made through WGTC and WGTI.

40.    Greenwood and Walsh failed to disclose to the pool participants that (a) they did not intend to and in fact did not invest participants' funds as they represented orally and in writing to participants, and (b) they were misappropriating participants' funds for personal use, to conceal trading losses, and to pay redemption requests to other pool participants that were based on fictitious rates of return.

## III.

## CONCLUSIONS OF LAW

**A.    Walsh Violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6(b)(a)(2)(i), (iii) (2006), and Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (C) (2012)**

1.    Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C §§6b (2)(i), (iii) (2006), make it unlawful for any person to cheat or defraud or attempt to cheat or defraud, or willfully deceive or attempt to deceive by any means whatsoever other persons in or in connection with orders to

make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the produce of byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof in connection with commodity futures contract sales or purchases.

2.      Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (C) (2012), make it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a contract market, for or on behalf of any other person (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

3.      During the Relevant Time, Walsh violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i), (iii) (2006), with respect to acts occurring before June 18, 2008, and violated Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (C) (2012), with respect to acts occurring on or after June 18, 2008, in that he cheated or defrauded pool participants by: misrepresenting the pools' investment strategy when soliciting prospective participants; misappropriating participants' funds for his personal use failing to inform prospective and actual pool participants that their funds would be and had been

12

misappropriated for the personal use of Greenwood and Walsh; and concealing from investors trading and investment losses.

**B.      Walsh Violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012)**

4.      During the Relevant Time, Walsh acted as a CPO in that he engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise and in connection therewith, accepted or received funds, securities or properties from others for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

5.      During the Relevant Time, Walsh violated Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A), (B) (2012), in that as a CPO, he directly or indirectly employed a device, scheme, or artifice to defraud commodity pool participants, or engaged in transactions, practices or a course of business that operated as a fraud or deceit upon commodity pool participants by: misrepresenting the pools' investment strategy when soliciting prospective participants; misappropriating participants' funds for his personal use failing to inform prospective and actual pool participants that their funds would be and had been misappropriated for the personal use of Greenwood and Walsh; and concealing from investors trading and investment losses.

**IV.**

**ORDER FOR PERMANENT INJUNCTION**

1.      Walsh is permanently restrained, enjoined and prohibited from directly or indirectly, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a contract market, for or on behalf of any other person (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to

13

deceive the other person by any means whatsoever in regard to any order or contract or the
disposition or execution of any order or contract, or in regard to any act of agency performed,
with respect to any order or contract for the other person in violation of Sections 4b(a)(1)(A) and
(C) of the Act as amended by the CRA, 7 U.S.C. §§ 6b(a)(1)(A), (C) (2012).

2.      Walsh is permanently restrained, enjoined and prohibited from using the mail or
any means or instrumentality of interstate commerce to directly or indirectly employ any device,
scheme or artifice to defraud any client of participant or prospective client or participant, or to
engage in any transaction, practice or course of business which operates as a fraud or deceit upon
any client or participant or prospective client or participant, in violation of Section 4o(1) of the
Act, 7 U.S.C. § 6o(1) (2006).

3.      Walsh is permanently restrained, enjoined and prohibited from engaging, directly
or indirectly, in:

   a)   trading on or subject to the rules of any registered entity (as that term is defined in
        Section 1a of the Act, as amended, 7 U.S.C. § 1a (2012));

   b)   entering into any transactions involving commodity futures, options on
        commodity futures, commodity options (as that term is defined in Regulation 1.3
        (hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), swaps (as that term is
        defined in Section 1a(47) of the Act, as amended, and as further defined by
        Commission regulation 1.3(xxx), 17 C.F.R. 1.3(xxx)) and/or foreign currency (as
        described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the
        CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex
        contracts") for his own personal account or for any account in which he has a
        direct or indirect interest;

   c)   having any commodity futures, options on commodity futures, commodity
        options, swaps, and/or forex contracts traded on his behalf;

   d)   controlling or directing the trading for or on behalf of any other person or entity,
        whether by power of attorney or otherwise, in any account involving commodity
        futures, options on commodity futures, commodity options, swaps, and/or forex
        contracts;

14

e)      soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, swaps and/or forex contracts;

f)      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011);

g)      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012)) registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013);

4.      The injunctive provisions of this Order shall be binding upon Walsh and any person acting as an agent, employee, servant or attorney of Walsh, and any person in active concert and participation with Walsh who receives actual notice of this Order by personal service or otherwise.

## V.

## DISGORGEMENT AND CIVIL MONETARY PENALTY

## IT IS FURTHER ORDERED THAT:

1.      Walsh shall disgorge funds received as a result of the course of illegal conduct alleged in the Complaint. The disgorgement amount is to be determined at a later date by agreement between the CFTC and Walsh within one hundred twenty (120) days of the termination of the court-appointed receivership in this case, or by the Court as soon as possible thereafter.

2.      Walsh shall pay to the Commission a civil monetary penalty, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012). The amount of the civil monetary penalty is to be determined at a later date by agreement between the CFTC and Walsh within one hundred

twenty (120) days of the entry of this Partial Judgment, or by the Court as soon as possible
thereafter.

      3.      In connection with any hearing or briefing to determine the amount of
disgorgement and/or civil monetary penalty, and at any oral argument held, (a) Walsh shall be
precluded from arguing that he did not violate the Act as alleged in the Complaint and found in
this Partial Judgment; (b) Walsh may not challenge the validity of this Partial Judgment or his
consent thereto; (c) solely for purposes of such hearing, briefing or argument, the allegations of
the Complaint shall be accepted and deemed true by the Court; and (d) the Court may determine
the issues raised in the hearing, briefing or argument on the basis of affidavits, declarations,
excerpts of sworn testimony or investigative testimony and documentary evidence, without
regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of
Civil Procedure and without conducting an evidentiary hearing.

      4.      Walsh shall cooperate fully and expeditiously with the CFTC, including the
CFTC's Division of Enforcement, in any current or future investigation, civil litigation or
administrative matter related to the subject matter of this action. As part of such cooperation,
Walsh shall comply, to the full extent of his abilities, promptly and truthfully with any inquiries
or requests for information including but not limited to, requests for production of documents
and authentication of documents, shall provide assistance at any trial, proceeding, or
investigation related to the subject matter of this action, including but not limited to, requests for
testimony, depositions, and/or interviews. Should the CFTC file any additional action(s) related
to the subject matter of this action, Walsh is directed to appear in the judicial district in which
such action(s) is pending, or in a suitable judicial district agreed to by the parties, to provide
deposition testimony and trial testimony should such testimony be necessary.

## VI.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall

retain jurisdiction of this matter for the purpose of: resolving the reserved issues of the amounts

of disgorgement and civil monetary penalty; implementing and enforcing the terms and

conditions of this Consent Order; to entertain any suitable application or motion for additional

relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for

any other purpose relevant to this action.

## VII.

### MISCELLANEOUS PROVISIONS

1.      Notice:  All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

Aitan Goelman, Director of Enforcement
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street N.W.
Washington, DC 20581

Notice to Defendant Walsh

Justin M. Sher
Sher Tremonte LLP
80 Broad Street, Suite 1301
New York, New York 10004,

All such notices to the Commission and the Receiver shall reference the name and docket

number of this action.

2.      Change of Address/Phone: Until such time as Walsh fully satisfy their

disgorgement liability and any other obligations set forth in the Consent Order and/or any

subsequent order of this Court, Walsh shall provide written notice to the Commission and the

Receiver by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

3.    Entire Agreement and Amendments: This Consent Order incorporates all the terms and conditions of the agreement among the parties to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

4.    Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by such holding.

5.    Waiver: The failure of any party to this Consent Order to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

6.    Enforcement of this Consent Order: This Consent Order shall remain in effect until further order of the Court and the Court shall retain jurisdiction over this action to ensure compliance with this Consent Order and for all other purposes related to this action. Walsh understands that the terms of the Supplemental Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

7.   Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, email, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Supplemental Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Supplemental Consent Order.

## VIII.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Partial Judgment forthwith and without further notice.

**SO ORDERED:**

AUG 2 0 2014

**UNITED STATES DISTRICT JUDGE**
**HON. GEORGE B. DANIELS**

Consented to:

Stephen Walsh

Date: _Aug, 06_ , 2014

On _Aug  06_ , 2014, x Stephen Walsh , a person known to me, personally appeared before me and acknowledged executing the foregoing Consent Order.

Notary Public

**NAGASAR LACHMAN**
Notary Public, State of New York
Registration #01LA...289
Qualified in Queens County
Commission Expires Feb. 12, 2015

19

Paul G. Hayeck
Peter M. Haas
JonMarc P. Buffa
1155 21st Street N.W.
Washington, D.C. 20581
*Attorneys for Plaintiff*
*U.S. Commodity Futures Trading Commission*

Approved as to form:

Justin M. Sher
Sher Tremonte LLP
80 Broad Street, Suite 1301
New York, New York 10004
*Attorney for Defendant Stephen Walsh*