UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                    Plaintiff,<br><br>  -against-<br><br>STEPHEN WALSH, PAUL GREENWOOD, WESTRIDGE CAPITAL MANAGEMENT, INC., WG TRADING INVESTORS, LP, WGIA, LLC,<br><br>                    Defendants,<br><br>WESTRIDGE CAPITAL MANAGEMENT ENHANCEMENT FUNDS INC., WG TRADING COMPANY LP, WGI LLC, K&L INVESTMENTS, AND JANET WALSH,<br><br>                    Relief Defendants. | Civil Action No.: 09-CV-1749 (GBD) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>  -against-<br><br>WG TRADING INVESTORS, L.P., WG TRADING COMPANY LIMITED PARTNERSHIP, WESTRIDGE CAPITAL MANAGEMENT, INC., PAUL GREENWOOD, and STEPHEN WALSH<br><br>                    Defendants,<br><br>ROBIN GREENWOOD and JANET WALSH<br><br>                    Relief Defendants. | Civil Action No.: 09-CV-1750 (GBD) |

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S</u>

<u>MOTION FOR ORDER APPROVING STIPULATIONS RE: TAX CLAIMS AND</u>

<u>AUTHORIZING RECEIVER TO PROCEED WITH THIRD DISTRIBUTION ON ALLOWED</u>

<u>INVESTOR CLAIMS IN THE MODIFIED AMOUNT OF $75,712,831</u>

1917454.2

Robb Evans & Associates LLC (the "Receiver"),[1] as the Court-appointed receiver over WG Trading Company, L.P., WG Trading Investors, L.P., and other entities and over the assets of various individuals, including Stephen Walsh ("Walsh") and Paul Greenwood ("Greenwood"), hereby submits the following memorandum of points and authorities in support of its motion for an order approving stipulations re: tax claims and authorizing the Receiver to proceed with the third distribution on allowed investor claims in the modified amount of $75,712,831.

I.  INTRODUCTION AND SUMMARY OF ARGUMENT.

On November 19, 2013, the Court entered its order (the "Third Distribution Order") granting the Receiver's motion for approval of a third distribution (the "Third Distribution") on allowed investor claims in the above-captioned actions in the total sum of $50,000,000.[2] Pursuant to the Third Distribution Order, the Third Distribution was originally to be made on or before December 9, 2013.

On December 5, 2013, the Receiver submitted its initial request for a postponement of the Third Distribution due to its discovery of unasserted potential tax claims against the defendants. Upon discovery of these potential claims, the Receiver immediately commenced efforts to resolve the issue with federal and New York state tax authorities. The Receiver thereafter submitted timely status reports to the Court, and requested, and received, additional postponements of the Third Distribution in order to facilitate a resolution.

The Receiver has now finalized stipulations (the "Stipulations") with both the Internal Revenue Service (the "Service") and the New York State Department of Taxation and Finance

---

[1] Reference to the Receiver in this memorandum means the Receiver, the Receiver's deputies, and its staff.

[2] The Third Distribution Order is SEC Action Dkt. No. 698 and CFTC Action Dkt. No. 732.

(the "Department"), pursuant to which, among other things, the Service and the Department have each agreed to subordinate any potential pre-receivership tax claims to the allowed claims of defrauded investors in this matter, with the proviso that the extent of the subordination extends only to the defrauded investors, and does not extend to the claims of non-investor creditors, including trade debt.

The Stipulations permit the Receiver to move forward with the Third Distribution, and are also consistent with the Department of Justice Tax Division Directive No. 137, "TAX CLAIMS AGAINST EMBEZZLERS, SWINDLERS, ETC. V. RECOVERY BY INVESTORS, DUPES, AND VICTIMS, ETC." ("Directive 137"), which confirms that it is the policy of the United States government to subordinate its tax claims to the claims of the victims of Ponzi schemes.[3] This policy does not extend to creditors other than a defrauded investor or victim.

Accordingly, the Receiver requests that the Stipulations be approved in their entirety, and that the Receiver be authorized to move forward with the Third Distribution. In addition, the Receiver is now prepared to increase the amount of the Third Distribution from $50,000,000 to $75,712,831, and accordingly requests the Court's authorization to do so.

II.     FACTUAL AND PROCEDURAL BACKGROUND.[4]

    A.     *The CFTC And SEC Actions.*

---

[3] A true and correct copy of Directive 137 (including the related U.S. Department of Justice discussion of some of the issues and considerations which arise in such cases), is attached hereto collectively as Exhibit 1. These documents are available online at: www.justice.gov/sites/default/files/tax/legacy/2009/05/08/D_2_TAX_DIR_137.DOC, and at: http://www.justice.gov/tax/readingroom/settlpdf/Z_Ponzi_schemes.pdf

[4] For purposes of brevity, the following is a brief summary only. The factual and procedural background of the case is discussed in greater detail in the Receiver's Motions in Support of the First (SEC Action Dkt. Nos. 390-393; CFTC Action Dkt. Nos. 425-428), Second (SEC Action Dkt. Nos. 531-534; CFTC Action Dkt. Nos. 558-561), and Third Distributions (SEC Action Dkt. Nos. 692-695; CFTC Action Dkt. Nos. 726-729).

This case arises out of a unitary Ponzi scheme made up of related entities (the "Westridge Entities"),[5] which collapsed in 2009 leaving in its wake hundreds of millions of dollars in unpaid investor and creditor claims. On February 25, 2009, the Commodity Futures Trading Commission ("CFTC") filed a complaint (the "CFTC Action") against Walsh, Greenwood and certain entities. The CFTC alleged that Walsh and Greenwood, using the Westridge Entities, devised and carried out a complex scheme in which they misappropriated at least $553 million from commodity pool participants. The CFTC further alleged that Walsh and Greenwood were able to conceal their fraud and trading losses for over a decade by providing false representations and account statements to investors.

On February 25, 2009, the Securities and Exchange Commission ("SEC") filed a complaint (the "SEC Action") against the Westridge Entities, Greenwood and Walsh, as well as Janet Walsh and Robin Greenwood as relief defendants. The SEC alleged that Greenwood and Walsh, using the Westridge Entities, orchestrated a complex fraudulent investment scheme whereby, rather than investing the monies in the manner they represented to investors, they misappropriated the funds to furnish lavish and luxurious lifestyles.

In order to immediately stop such fraudulent conduct and preserve the Court's ability to grant effective relief to the investors, the CFTC and SEC (collectively, the "Agencies") sought orders which, among other things, froze the assets owned, managed, held or controlled by the defendants, prohibited the defendants from destroying records, or denying the Agencies access to inspect and copy records, and appointed the Receiver to take control of the assets of the defendants. On February 25, 2009, this Court entered temporary restraining orders freezing

---

[5] For purposes of this memorandum, the "Westridge Entities" refers to WG Trading Company LP ("WGTC") and WG Trading Investors, LP ("WGTI").

assets and, among other things, appointing Robb Evans & Associates LLC as the temporary receiver. (SEC/CFTC Action Docket No. 2.) On May 22, 2009, the Court entered orders of preliminary injunction against defendants (SEC Action Docket No. 100; CFTC Action Docket No. 108) in which it ordered, among other things, that the Receiver continue to serve as Receiver with all of the duties and powers set forth in the initial receivership order. (Declaration of Brick Kane ("Kane Declaration" or "Kane Decl."), ¶¶ 1-2.)

B.   *The First and Second Distributions.*

The Receiver has previously made two distributions to investors. On April 21, 2011, pursuant to the Court's March 21, 2011 Order Granting Motion for Orders Allowing Claims and Approving the Receiver's Proposed Initial Distribution Plan ("Claims Allowance Order"),[6] the Receiver distributed $792,538,397 to the investors (the "First Distribution") based on the Receiver's scheduled distribution of $815 million. The First Distribution returned almost 85% of the investors' net principal investments. (Kane Decl. ¶ 9.)

In April 2013, pursuant to the Court's December 28, 2012 Order Granting the Receiver's Motion for Order Approving Second Distribution on Allowed Investor Claims ("Second Distribution Order"),[7] the Receiver distributed $39,966,651 to the investors (the "Second Distribution") based on the Receiver's scheduled distribution of $40 million. The combined First and Second Distributions returned approximately 89.1% of the investors' net principal investments. (Kane Declaration, ¶ 10.)

C.   *The Third Distribution Order*.

---

[6] The Claims Allowance Order is SEC Action Dkt. No. 435 and CFTC Action Dkt. No. 468.

[7] The Second Distribution Order is SEC Action Dkt. No. 613 and CFTC Action Dkt. No. 639.

The Receiver filed its motion for approval of the Third Distribution on November 14, 2013, which was granted pursuant to the Third Distribution Order entered on November 19, 2013.[8]  Pursuant to the Third Distribution Order, the Third Distribution was to be made on or before December 9, 2013.  The Third Distribution was approved in the amount of $50,000,000.  Upon payment of that amount, investors would have received approximately 94.3% of their net principal investments.  (Kane Decl. ¶ 11.)

      D.     *Postponement of the Third Distribution Pending Resolution of Potential Tax Claims*

On December 5, 2013, the Receiver submitted its initial request for a 60-day postponement of the Third Distribution due to its recent discovery of unasserted potential tax claims against the defendants.  The Receiver's request was granted by the Court on December 12, 2013.[9]  On January 31, 2014, the Receiver submitted a second update to the Court, wherein the Receiver requested an additional 90-day postponement of the Third Distribution.  The Receiver's request was granted by the Court on February 20, 2014.[10]  Thereafter, the Receiver submitted timely reports to the Court every 90 days, wherein the Receiver requested additional 90-day postponements of the Third Distribution, all of which were granted by the Court, most recently on July 23, 2015.[11]  (Kane Decl. ¶ 12.)

      E.     *The Stipulations*

The Receiver has now finalized written Stipulations with both the Service and the

---

[8] See SEC Action Dkt. No. 698 and CFTC Action Dkt. No. 732.

[9] See SEC Action Dkt. No. 704 and CFTC Action Dkt. No. 738.

[10] See SEC Action Dkt. No. 708 and CFTC Action Dkt. No. 744.

[11] See, e.g., SEC Action Dkt. Nos. 723, 743, 761, 775, 777, and 790 (7/23/15) and CFTC Action Dkt. Nos. 759, 778, 797, 811, 813, and 826 (7/23/15).

Department, pursuant to which, among other things, the Service and the Department have each agreed to subordinate any potential pre-receivership tax claims to the allowed claims of defrauded investors in this matter, with the proviso that the extent of the subordination extends only to the defrauded investors, and does not extend to the claims of non-investor creditors, including trade debt.  The Stipulations provide that the Service and the Department do not object to the First and Second Distributions, or to the Receiver proceeding with further distribution to holders of allowed investor claims.  (Stipulations, ¶¶ 1, 2; Kane Decl., ¶ 13.)

A true and correct copy of the Stipulation and Proposed Order between the Receiver and the Service, dated as of August 26, 2015 (the "Service Stipulation"), is attached to the Kane Declaration as Exhibit 1.  A true and correct copy of the Stipulation and Proposed Order between the Receiver and the Department, dated as of August 5, 2015 (the "Department Stipulation"), is attached to the Kane Declaration as Exhibit 2.  The original Stipulations are filed concurrently herewith.

III.   ARGUMENT.

The potential for tax claims against the defendants in these Ponzi scheme actions derives from the fact that gross income for tax purposes can include income derived from both legal and illegal sources.  (*James v. United States* (1961) 366 U.S. 213, 218, 81 S. Ct. 1052, 1054-1055.)

Approval of the Stipulations is appropriate because it will permit the Receiver to move forward with the Third Distribution.  The Stipulations are consistent with Directive 137, which confirms that it is the policy of the United States government to subordinate its tax claims to the claims of the victims of Ponzi schemes "[w]hen both the tax claim and the claim of the investor or victim arise from the same transaction and the investor or victim can trace its property to the fund in issue."  (See Directive 137 (Ex. 1, hereto), p. 1.)

As evidenced by the Receiver's reports[12] and the Service's approval of the Stipulations, those conditions exist here.  In the Receiver's reports, the Receiver has documented a long history of WGTC's and WGTI's practice of comingling funds, operating with disregard for corporate governance, and employing fraudulent accounting practices.  The details in the reports confirm that WGTC and WGTI were financially inseparable, and operated as a unitary Ponzi-type fraudulent enterprise.  The Receiver's findings, as detailed in the reports, were the basis of the District Court's decision to approve the Receiver's distribution motions, as affirmed by the United States Court of Appeals for the Second Circuit.  (See *Commodity Futures Trading Comm'n, et al. v. 3M Employee Welfare Benefit Assoc. Trust I, et al.*, Case No.  11-1516-CV (L) (2d. Cir. Apr. 3, 2013).)  Accordingly, under these facts and circumstances, and consistent with the spirit of Directive 137, the Receiver believes that it is entirely fair and reasonable for the Service and the Department to subordinate any potential tax claims that they may have against the defendants and/or relief defendants to the allowed claims of the investors.

IV.    CONCLUSION.

Based on the foregoing, the Receiver respectfully requests that the Motion be granted in its entirety, and that the Court enter an order approving the Stipulations, and each of them, in their entirety, and authorizing the Receiver to immediately move forward with the Third Distribution in the modified amount of $75,712,831 in the amounts shown in Exhibits 3 and 4 to the Kane Declaration.

---

[12] See Receiver's First Report dated May 27, 2009 is SEC Action Dkt. No. 102 and CFTC Action Dkt. No. 110.  The Receiver's Second Report dated June 3, 2010 is SEC Action Dkt. No. 303 and CFTC Action Dkt. No. 329.

Dated:  October 9, 2015
Los Angeles, California

                                        Respectfully submitted,

                                               /s/ Craig A. Welin
                                        Craig A. Welin, Esq.
Admitted Pro Hac Vice in the United States District Court-Southern District of New York
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, 19th Floor
Los Angeles, California  90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577
E-mail: cwelin@frandzel.com
Co-Counsel for Receiver
Robb Evans & Associates LLC

-and-

Gary Owen Caris, Esq.
Lesley Anne Hawes, Esq.
Admitted Pro Hac Vice in the United States District Court-Southern District of New York
DENTONS US LLP
300 South Grand Avenue, 14th Floor
Los Angeles, California 90071-3124
Telephone: (213) 688-1000
Facsimile: (213) 243-6330
E-mail: gary.caris@dentons.com
E-mail: lesley.hawes@dentons.com
Co-Counsel for Receiver
Robb Evans & Associates LLC

*Intentional page break, document continues on page 14.*

1917454.2            8

            -and-

D. Farrington Yates, Esq.
DENTONS US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
Telephone:  (212) 922-1800
Facsimile:  (212) 922-1819
E-mail:  farrington.yates@dentons.com
Co-Counsel for Receiver
Robb Evans & Associates LLC